IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD H.[1],

               Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of
Social Security,

               Defendant.

Case No. 3:19-cv-622-SI

OPINION AND ORDER

Kevin Kerr, SCHNEIDER KERR & ROBICHAUX, P.O. Box 14490, Portland, OR 97293. Of
Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Jordan D. Goddard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Richard H. ("Plaintiff") seeks judicial review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying his application for disability

---

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. When applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

insurance benefits ("DIB") and Supplemental Social Security Income ("SSI"). Because the Commissioner's findings are not supported by substantial evidence, the decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

In July 2015, Plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of September 30, 2011. AR 180-87. Plaintiff was born on July 2, 1968 and was 43 years old as of the alleged disability onset. Plaintiff's applications were denied both initially and upon reconsideration, and Plaintiff requested an administrative hearing. AR 100-17. Plaintiff's hearing took place before an ALJ in March 2018. AR 34-54. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 15-33. Plaintiff requested review of the hearing decision, which the Appeals Council denied in November 2018. The ALJ's decision then became the final decision of the agency from which Plaintiff seeks review.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Act through

March 30, 2013 and proceeded to the sequential analysis. AR 20. The ALJ noted that Plaintiff

had been working 42 to 45 hours each week for five weeks as a dishwasher. But the ALJ

concluded that the proceeds from that work did not count as "sustained earnings." AR 21. For

that reason, at step one the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since the alleged onset date. AR 20. At step two, the ALJ found the following severe,

medically determinable impairments: degenerative disc disease and missing right index and

middle fingers beyond the first knuckles. AR 21. At step three, the ALJ found that none of those

impairments met or equaled the severity of any impairment listed at 20 C.F.R. Part 404,

Subpart P, Appendix 1. *Id.* Specifically, the ALJ found that Plaintiff's degenerative disc disease

did not meet or equal listing 1.04 for disorders of the spine because Plaintiff "does not have

nerve root compression with the other cited findings in subsection (A)." AR 22. Between step

three and step four, the ALJ formulated Plaintiff's RFC and found that Plaintiff could

> perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) with the following additional limitations: lifting
> and carrying twenty pounds occasionally and ten pounds
> frequently; stand and walk about six hours in an eight-hour
> workday; sitting about six hours in an eight-hour workday; pushing
> and pulling the same as lifting and carrying; frequently climbing
> ramps and stairs; occasionally climbing ladders, ropes, and
> scaffolds; frequently stooping; and occasionally handling and
> fingering with the dominant (right) upper extremity.

*Id.* At step four, the ALJ found that Plaintiff could not perform past relevant work. At step five,

the ALJ determined that "there are jobs that exist in significant numbers in the national economy

that [Plaintiff] can perform." AR 27. Based on the Vocational Expert's testimony at the

administrative hearing, the ALJ identified four jobs that Plaintiff could perform: furniture-rental

consultant, tanning salon attendant, school bus monitor, and conveyor line bakery worker.

AR 28.

## DISCUSSION

### A.  Step Three Analysis

At step three of the sequential evaluation process, the ALJ must consider whether a

claimant's severe impairments, either separately or in combination, meet or equal one of the

presumptively disabling impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii);

*see* 20 C.F.R. Part 404, Subpart P, Appendix I. In order to demonstrate that a claimant's

impairment is the medical equivalent of one of the listed impairments, the claimant must present

medical findings equal in severity to all the criteria of a listing. *Sullivan v. Zebley*, 493 U.S. 521,

531 (1990) (emphasis omitted); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

To meet Listing § 1.04A for disorders of the spine, a claimant must provide evidence of a

compromised nerve root or spinal cord with: "nerve root compression characterized by

neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if

there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" because Plaintiff "does not have nerve root compression with the other cited findings in subsection [1.04] (A)." AR 22. Plaintiff contends that the ALJ's step three finding is not supported by substantial evidence and that Plaintiff meets all the requirements of Listing 1.04A. ECF 14 at 5.

The ALJ's finding that Plaintiff "does not have nerve root compression" is inconsistent with the medical record and the ALJ's own opinion. The ALJ noted that Plaintiff's September 2015 MRI showed "compression of the left L5 nerve root." AR 24. Plaintiff's attorney also referred to that MRI during the administrative hearing, noting that it showed "disc herniation with nerve root compression." AR 37. Dr. Mueller, one of Plaintiff's examining physicians, confirmed that the MRI scan showed "disk herniation with nerve root compression." AR 342. The ALJ erred by not addressing the record evidence that Plaintiff suffers from nerve root compression.

The Commissioner argues that this error is harmless, however, because Plaintiff did not establish that "all the [1.04A] criteria were present and simultaneous and persisted for at least twelve continuous months" and thus suffered no prejudice. ECF 13 at 13. But the ALJ found that Plaintiff did not meet Listing 1.04A "because he does not have nerve root compression"—not because Plaintiff did not show that all the 1.04A criteria were continuously present for at least a year. And a reviewing court may not affirm the Commissioner on a ground on which the Commissioner did not rely. *See Bray*, 554 F.3d at 1226. Further, the Court cannot conclude that

no reasonable ALJ, who credits the objective medical evidence of nerve root compression

discussed above, could find that Plaintiff meets or equals Listing 1.04A. *See Stout v. Comm'r*,

454 F.3d 1050, 1055 (9th Cir. 2006) (holding that legal errors are harmless only if they are

inconsequential to the non-disability decision). Along with the evidence of nerve root

compression, the record contains evidence of the other Listing 1.04A criteria. *See* AR 325

(describing "lumbar pain with radiculopathy"); AR 335 (noting "atrophy of left calf muscle" and

"positive straight leg raise left"), AR 392 (noting "some decreased sensation" and "disk

herniation . . .  with nerve compression" persisting after Plaintiff's surgery). Thus, remand is

proper for the ALJ to address the evidence of nerve root compression and to assess whether

Plaintiff meets the other Listing 1.04 A criteria.

## B.  Step Five Analysis

At step five, the burden of proof shifts to the Commissioner to "identify specific jobs

existing in substantial numbers in the national economy that [a] claimant can perform despite

[her] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ may rely on

the testimony of a Vocational Expert ("VE") to determine whether a claimant retains the ability

to perform other work in the national economy at step five. *See Osenbrock v. Apfel*, 240 F.3d

1157, 1162 (9th Cir. 2001). "When there is an apparent conflict between the vocational expert's

testimony and the [Dictionary of Occupational Titles] . . . the ALJ is required to reconcile the

inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

At the administrative hearing, the VE at first testified that "there would not be

occupations" for an individual with Plaintiff's RFC. AR 47. In the VE's opinion the "sedentary

work" and "light work" category occupations available to a person with Plaintiff's RFC "are

seasonal and . . . would not constitute gainful employment." *Id.* The VE acknowledged that his

opinion that the available occupations would not constitute gainful employment differed from the

official position in the Dictionary of Occupational Titles ("DOT") and Selected Characteristics of jobs. AR 51. The ALJ then questioned the VE about four specific "light work" category occupations that the ALJ believed to fit Plaintiff's RFC. The VE noted that three of these jobs (conveyor belt bakery worker, tanning salon attendant, and school bus monitor) did not exist in significant numbers in the national economy, but that the fourth (furniture rental consultant) did and "was consistent with [the] hypothetical." *Id.* On that point, the VE testified that his opinion was consistent with the DOT. *Id.* The ALJ limited Plaintiff to "light work" in the RFC, and at step five the ALJ relied on the VE's testimony that Plaintiff could work as a furniture rental consultant at to justify his finding that Plaintiff was not disabled. AR 28.

Plaintiff argues that the ALJ did not address the "apparent conflict" between the VE's testimony and the DOT. *Zavalin*, 778 F.3d at 846. The Court disagrees. The VE first testified that there were no "light work" or "sedentary work" category jobs that fit the hypothetical RFC but acknowledged that his opinion differed from the DOT. The ALJ recognized that conflict and addressed it by questioning the VE on four specific "light work" category jobs that the ALJ believed were consistent with the RFC. The VE then confirmed that these four jobs were consistent with the hypothetical RFC. Although the VE still maintained that his opinion differed from the DOT on whether the "sedentary work" category jobs constituted gainful employment, he agreed that his "updated answers" about the "light work" category occupations were consistent with the DOT. AR 51. The ALJ thus reconciled the "apparent conflict" by drawing the VE's attention to four "light work" category jobs consistent with the RFC and that the VE agreed constituted gainful employment.

Plaintiff alternatively argues that the ALJ did not show that the four identified jobs exist in significant numbers in the national economy. The Commissioner concedes that the

occupations of tanning salon attendant, school bus monitor, and conveyor belt bakery worker do not meet that threshold. ECF 13 at 15. But the Commissioner contends that the ALJ reasonably found that the occupation of furniture rental consultant exists in significant numbers in the national economy.

The VE testified that there are 93,580 furniture rental consultant jobs available in the national economy. AR 51. The ALJ cited that VE testimony to justify his conclusion that Plaintiff was not disabled. *See* AR 28 ("[t]here are 93,580 of these jobs available in the national economy."). The ALJ reasonably relied on the VE's testimony that there existed in the national economy a significant number of positions for furniture rental consultants. VEs consistently testify to that point. *See, e.g.*, *Jenkins v. Colvin*, 2016 WL 4126707, at *4 (E.D. Cal. Aug. 2, 2016) (affirming ALJ's decision relying on VE testimony that plaintiff could work as a furniture rental consultant); *Nelida C. v. Comm'r of Soc. Sec.*, 2018 WL 7983287, at *3 (E.D. Wash. Dec. 27, 2018) (finding no error where ALJ determined at step five that plaintiff could work as furniture rental consultant); *Webb v. Berryhill*, 2019 WL 459192, at *3 (S.D. Cal. Feb. 6, 2019) (holding that ALJ properly relied on VE testimony that there were 52,000 furniture rental consultant jobs in the national economy). The ALJ's step five finding was supported by substantial evidence.

## C. Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency, and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications, and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson,* 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ summarized Plaintiff's account of his symptoms. Plaintiff reported that he suffers from "significant pain in his back that radiates down his legs as well as weakness and loss of mobility that make him unable to work." AR 22. In a Function Report from October 2015, Plaintiff stated that it is difficult for him to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. AR 23. These symptoms continued to bother him after his back surgery, and Plaintiff reported still experiencing pain and an impaired ability to stand, walk, and sit. At the

hearing, Plaintiff testified that his leg sometimes felt like it was "on fire" from nerve pain during

his work as a dishwasher. AR 43. Plaintiff also noted that his back, leg, and bilateral hip pain all

got worse when he started working again. *Id.* Plaintiff testified that he had trouble sleeping

because his arm would sometimes go numb. AR 44.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms," thus satisfying step one of the framework. But the ALJ

determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects

of these symptoms are not entirely consistent with the medical evidence and other evidence in

the record for the reasons explained in this decision." AR 23. The ALJ cited three reasons: (1)

inconsistency with Plaintiff's activities of daily living ("ADLs"), (2) Plaintiff's conservative and

intermittent treatment history, and (3) lack of support in the objective medical record. The Court

considers whether these are clear and convincing reasons for rejecting Plaintiff's subjective

symptom testimony.

### 1.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the

plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495

F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the

activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities

"contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant,

however, need not be utterly incapacitated to receive disability benefits, and completion of

certain routine activities is insufficient to discount subjective symptom testimony. *See id.*

at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for

benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)

("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

Plaintiff testified that he resumed work as a dishwasher five weeks before the hearing and that he worked 42 to 45 hours each week. AR 39. Plaintiff told the ALJ that although his nerve pain sometimes "really flared up," he had not yet missed a day of work because of his illness. The ALJ properly cited Plaintiff's ability to work as a dishwasher (a job that exceeded the ALJ's RFC) as a clear and convincing reason to discount Plaintiff's subjective symptom testimony. A person does not need to be utterly incapacitated to be disabled but working a full-time job as a dishwasher meets the threshold for transferrable work skills. *See Molina*, 674 F.3d at 1112-13. The ALJ's finding that Plaintiff's dishwasher work was not substantial gainful activity does not render the ALJ's reliance improper. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (upholding ALJ's reliance on work that falls short of substantial gainful activity). The ALJ properly discounted Plaintiff's subjective symptom testimony.

### 2. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference

that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ reasonably found that Plaintiff underwent conservative treatment and properly cited that treatment as a reason to discount Plaintiff's subjective symptom testimony. Plaintiffs' physicians offered him many pain management options, which he consistently refused. He declined a referral to a pain management program in 2015, shortly after he first sought treatment for his back pain. AR 347. He was prescribed ibuprofen and Gabapentin to control his pain yet declined any stronger options—both non-narcotic and narcotic. One doctor recommended that Plaintiff try oral steroids, but Plaintiff refused. AR 365. At the administrative hearing, Plaintiff testified that he currently managed his pain with yoga. AR 38. Based on this treatment history, the ALJ reasonably inferred that Plaintiff's symptoms were not "as all-disabling" as he reported. *Tommasetti*, 533 F.3d at 1039.

Plaintiff argues that he had "a good reason for not seeking more aggressive treatment" because he did not have health insurance for much of the relevant period. *Carmickle*, 533 F.3d at 1162. That does not fully explain Plaintiff's conservative treatment because Plaintiff did not seek more aggressive treatment even when he did have insurance. Plaintiff had insurance in 2015, when his back pain allegedly worsened, but he still refused more aggressive pain management options from 2015 onwards. Although Plaintiff's insurance company repeatedly denied recommended surgeries, Plaintiff does not claim that they denied coverage for pain

medication. The record does not establish that Plaintiff refused pain medication because he

"could not afford it." *Smolen*, 80 F.3d at 1284. Thus, Plaintiff's insurance situation does not

explain why he refused stronger pain medication and other pain management options.

### 3.  Medical Record

An ALJ may consider the lack of corroborating objective medical evidence as one factor

in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it

was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also*

*Reddick*, 157 F.3d at 722 (the "Commissioner may not discredit the claimant's testimony as to the

severity of symptoms merely because they are unsupported by objective medical evidence"); 20

C.F.R. § 404.1529(c)(2) (noting that the Commissioner will not "will not reject your statements

about the intensity and persistence of your pain or other symptoms or about the effect your

symptoms have on your ability to work solely because the available objective medical evidence

does not substantiate your statements").

The ALJ discounted Plaintiff's subjective symptom testimony because the "general lack

of information [in the medical record] does not show significant and consistent limitation during

the period in question." AR 23. It would be error for the ALJ to reject Plaintiff's subjective

symptom testimony about the severity of his symptoms "solely" on that basis. *Robbins*, 466 F.3d

at 883. But the ALJ cited two other "clear and convincing" reasons to reject the testimony:

inconsistency with ADLs and Plaintiff's conservative treatment. Thus, the ALJ did not err by

noting the dearth of objective medical evidence supporting Plaintiff's subjective pain testimony.

The ALJ's reasoning could be more specific—he cited the "general lack of information," which

might fall short of the requirement to "state which pain testimony is not credible and what

evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. But as discussed

above, the ALJ provided two valid reasons to discount Plaintiff's testimony. Thus, any error was harmless. *See Batson*, 359 F.3d at 1197 (finding that an ALJ's decision to discount a plaintiff's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the testimony are valid).

## D. Opinion Testimony

### 1. Medical Opinion Testimony of Dr. Kuether

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*ˏ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Kuether was one of Plaintiff's treating physicians. Thus, the ALJ is required to provide specific and legitimate reasons to discount Dr. Kuether's medical source opinion. *See Ryan*, 528 F.3d at 1198. In August 2017, Dr. Kuether noted that Plaintiff "cannot sit in a chair still for any time" and spent "really the whole visit constantly shifting his [weight] from forward to backwards trying to get some sort of relief." AR 398. Plaintiff contends that the ALJ erred because he did not address these limitations at all in his decision. The Commissioner does not

argue that the ALJ addressed these comments but responds that they were observations rather than a true medical source opinion. The dispositive question is whether Dr. Kuether's comments from August 2017 are medical opinion testimony (in which case the ALJ erred by not addressing them) or mere observations (in which case the ALJ did not need to address them).

"Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The ALJ reasonably found that Dr. Kuether's observation that Plaintiff shifted back and forth in his seat constantly was not a medical opinion. That statement does not reflect any judgment; it is merely an observation. But Dr. Kuether also opined on Plaintiff's physical restrictions—he noted that Plaintiff could not sit in a chair for any amount of time. AR 398. That is a medical opinion, and the ALJ erred by not providing specific and legitimate reasons to reject Dr. Kuether's opinion that Plaintiff could not sit in a chair for any period. *See Garrison*, 759 F.3d at 1112-13 (holding that ALJ erred by disregarding medical opinion without comment). The Court cannot disregard this error as harmless, because the ALJ's RFC did not include any limitations on Plaintiff's ability to sit for any duration. Thus, remand is appropriate to determine whether Dr. Kuether's medical opinion, if credited and included in the RFC, would affect the ultimate disability determination.

### 2.  Lay Testimony of Mr. deLongpre

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an

individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Mr. deLongpre is a Vocational Rehabilitation Counselor ("VRC"), which is a type of lay witness. *See* SSR 06-03p, at *2. In February 2016 Mr. deLongpre opined that Plaintiff "is restricted from lifting more than twenty pounds, and has limitations in body positioning and manipulation with his right hand." Mr. deLongpre also opined that Plaintiff "requires accommodations not typically made for others in terms of capacity and endurance, such as the ability to change position as needed." AR 352. The ALJ gave Mr. deLongpre's opinion "little weight" because "Mr. deLongpre is not a medical professional nor did he have access to more

recent medical records or update his opinion later." AR 26. Plaintiff urges that these are not

"germane reasons" to reject Mr. deLongpre's testimony.

The Court need not consider whether the ALJ erred by discounting Mr. deLongpre's

testimony for these reasons. Any error was harmless. The ALJ properly discounted Plaintiff's

subjective symptom testimony because of its inconsistency with his work as a dishwasher and

because of Plaintiff's conservative treatment history. Plaintiff's work as a dishwasher is also

inconsistent with Mr. deLongpre's testimony. *See Molina*, 674 F.3d at 1122 (holding that error is

harmless when "the same evidence that the ALJ referred to in discrediting [the claimant's]

claims also discredits [the lay witness's] claims") (quotation marks omitted). Further, the

medical opinion testimony of Dr. Lahr, which the ALJ assigned "great weight," contradicts

Mr. deLongpre's testimony. *See id.* at 1118-19 (holding that error is harmless "where the [lay

witness] testimony is contradicted by more reliable medical evidence that the ALJ credited").

## E.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec.

Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether

the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error both at step three of the sequential analysis and in assessing Dr. Kuether's medical opinion testimony. The Court does not, however, find that the record is free of all conflicts and ambiguities. Accordingly, further proceedings will be useful.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 8th day of May, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge